UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER MATTHEOS, <br><br>                          Plaintiff, <br><br> -against- <br><br> JLG INDUSTRIES, INC. and RLM INDUSTRIES, INC., <br><br>                          Defendants. | **MEMORANDUM AND OPINION** <br> 20-CV-02356 |

**HECTOR GONZALEZ**, United States District Judge:

Before the Court is Defendant RLM Industries, Inc. motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF No. 87. For the reasons stated herein, the motion is denied.

## FACTUAL BACKGROUND

At the time this action commenced, Plaintiff Peter Mattheos was a resident of Suffolk County, New York, and an employee of Sunbelt Rentals, Inc. ("Sunbelt"), which was located in, Islip, New York. ECF No. 1-2 ("Compl.") ¶¶ 1, 23. Defendant JLG Industries, Inc. ("JLG") is a corporation with its principal place of business in Fulton County, Pennsylvania. Compl. ¶ 5; ECF No. 91-2 ¶ 5. JLG manufactures and distributes lift machinery, such as forklifts. Compl. ¶ 9; ECF No. 91-2 ¶ 9. Defendant RLM Industries, Inc. ("RLM") is a Michigan corporation with its principal place of business in Oakland County, Michigan. Compl. ¶ 15; ECF No. 22 ¶ 15. RLM manufactures and sells lift machinery, including significant sales to JLG. Compl. ¶ 20. RLM also maintains a website through which it markets its products to consumers nationwide. ECF No. 92-4.

Plaintiff alleges that he was injured on March 19, 2019, while operating machinery manufactured and distributed by JLG and RLM. Compl. ¶¶ 11, 21, 35, 36. Specifically, the alleged injury occurred while Plaintiff was operating an "Engine Powered Boom Lift" manufactured by JLG with a defective "jib link" manufactured by RLM. *Id.*; ECF No. 91-3 at 1. Due to the incident, Plaintiff alleges that he "suffered great physical and mental pain" and "severe and permanent injuries to various parts of his body." Compl. ¶ 51.

## PROCEDURAL BACKGROUND

Plaintiff originally filed this action on March 6, 2020, in New York State Supreme Court, Suffolk County. Compl. at 1. Plaintiff asserted causes of action against JLG and RLM for strict products liability, negligence, and breach of express and implied warranties after sustaining personal injuries while operating a defective boom lift. *Id*. ¶¶ 49, 50, 57, 60, 61. The injuries occurred in Suffolk County on his employer, Sunbelt's, premises. *Id*. ¶¶ 23, 35. Sunbelt owned the JLG-supplied boom lift at the time of the accident. *Id*. ¶¶ 12, 23, 24. JLG removed the case to this Court in May 2020 and filed a cross claim against RLM that same month. ECF Nos. 1, 6.

On August 11, 2020, RLM moved to dismiss the action arguing this Court lacked personal jurisdiction over it. ECF No. 21. RLM also moved, in the alternative, to transfer venue to a district court in Michigan. *Id*. In response, both Plaintiff and JLM argued that the Court should deny RLM's motion because personal jurisdiction exists pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a). ECF No. 21-1 at 1; ECF No. 21-2 at 1. Alternatively, RLM argued that the Court should permit jurisdictional discovery, particularly related to whether RLM knew that its products were being sold for use in New York and whether RLM derives a substantial benefit from interstate commerce. ECF No. 21-1 at 2; ECF No. 21-2 at 6–7.

On March 30, 2021, the Court denied RLM's motion to dismiss.  ECF No. 48.  The Court found *prima facie* evidence of the Court's jurisdiction over RLM.  *Id*. at 5–6.  Most importantly, the Court found that "RLM solicits business in New York and that RLM was aware that at least some of its Jib Links painted in 'Sunbelt Green' were purchased for JLG's New York[] client, Sunbelt.  These facts narrowly establish a prima facie showing of personal jurisdiction."[1]  *Id*. at 6.  Despite this finding, however, the Court ordered the parties to engage in jurisdictional discovery over RLM's contacts with New York as it "struggle[d] to find evidence of RLM's direct contacts with New York."  *Id*.  The Court noted that, to maintain personal jurisdiction, Plaintiff and JLG would need to show that "RLM did more than *just* sell products to JLG that resulted in a tort in New York . . . [as] foreseeability *alone* is insufficient to establish personal jurisdiction"  *Id*. (emphasis added).

After conducting that discovery, on June 13, 2022, RLM again moved to dismiss the Complaint, arguing that the Court lacked personal jurisdiction.  ECF No. 87-1.  Both Plaintiff and JLG have opposed the motion, arguing that the Court has personal jurisdiction over RLM.  ECF No. 91; ECF No. 92 at 8–12.  JLG has made the alternative argument that, if the Court concludes it lacks jurisdiction, it should transfer venue to the U.S. District Court for the Middle District of Pennsylvania, rather than dismiss the claims against RLM.  ECF No. 92 at 13–16.

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction is reviewed under the same legal standard as a motion to dismiss for improper venue.  *Precision Wellness LLC v. Demetech Corp.*, No. 21-cv-1244, 2022 WL 970773, at *2 (E.D.N.Y. Mar. 30, 2022) (citing *Williams v.*

---

[1]  Sunbelt is not exclusively based in New York, and the Complaint does not allege that its principal place of business is in New York, but the company does have a significant presence in Long Island and New York City, *see* Compl. ¶¶ 23–25, 35.

3

*Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 269 (E.D.N.Y. 2015)).  In both circumstances, the plaintiff bears the burden of demonstrating that venue and jurisdiction are proper.  *Id*. (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)).  The Court "may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials."  *Id.* at *3.

"The showing a plaintiff must make to meet [this] burden is governed by a sliding scale, which varies depending on the procedural posture of the litigation."  *Precision*, 2022 WL 970773, at *2 (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)).  "Absent a full-blown evidentiary hearing," plaintiff "need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."  *DeLorenzo v. Ricketts & Assocs., Ltd.*, No. 15-cv-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017) (internal quotations omitted).  At this stage, "although pleadings and affidavits are construed in the light most favorable to the plaintiff, conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction."  *Id.* (internal quotations omitted).  "The allegations in the complaint are presumed true only to the extent they are uncontroverted by the defendant's affidavits."  *Precision*, 2022 WL 970773, at *3 (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

## DISCUSSION

Based on its review of the relevant record, the Court concludes that RLM is subject to personal jurisdiction in this action pursuant to New York's long-arm statute and in accordance with due process principles.

4

A. **Personal Jurisdiction Under New York Law**

In determining whether there is personal jurisdiction over a defendant, a district court must first look to state law—in this case, New York law. *Precision*, 2022 WL 970773, at *3 ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.") (citing *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). After first determining whether New York law permits the court's exercise of personal jurisdiction over the defendant, the court must next decide whether that jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Williams*, 81 F. Supp. 3d at 270).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Precision*, 2022 WL 970773, at *3 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). All parties, and the Court, have already concluded that general jurisdiction does not exist. ECF No. 48 at 4 n.1. The question that remains, therefore, is whether the Court has specific jurisdiction over RLM under N.Y. C.P.L.R. § 302(a)(3)(ii).

The New York Court of Appeals has established five elements that must be satisfied to establish specific jurisdiction under C.P.L.R. § 302(a)(3)(ii): (1) the defendant must have committed a tortious act outside of New York; (2) the cause of action at issue must have arisen as a result of this act; (3) this act must have caused an injury to a person or property in New York; (4) the defendant expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from either interstate or international commerce. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011); *see also Carson Optical, Inc. v. RQ Innovasion Inc.*, No. 16-cv-1157, 2020 WL

1516394, at *5 (E.D.N.Y. Mar. 30, 2020) (applying *Penguin Group* test).  The Court concludes that Plaintiff has established each of these elements.

There appears to be no dispute as to the first three elements of the test, nor has there been since RLM filed its first motion to dismiss for lack of personal jurisdiction back in 2020. Plaintiff alleges he was injured at his place of employment in New York by a defective product manufactured by Defendant RLM outside of the state, satisfying the first three elements under *Penguin Group*.  Compl. ¶¶ 11, 21, 35, 36.  In addition, discovery has shown that "RLM conducted nearly $1 million of business with JLG in 2019 just for jib links alone," satisfying the fifth *Penguin Group* element (deriving substantial revenue from interstate commerce).  ECF No. 91 at 4.  RLM does not challenge the existence of these elements in its moving papers.  *See* ECF No. 87-1.

The only question, therefore, that needs to be addressed under the *Penguin Group* test is whether RLM "expect[ed] or should [have] reasonably expect[ed] the act to have consequences in [New York.]"  *Carson Optical*, 2020 WL 1516394, at *5; *see also* N.Y. C.P.L.R. § 302(a)(3)(ii).  The Court previously found that RLM's conduct made it foreseeable that it could have been dragged into court in New York.  ECF No 48 at 6.  In particular, the Court found it persuasive that "RLM was aware that at least some of its Jib Links painted in 'Sunbelt Green' were purchased for JLG's New York[] client, Sunbelt."  *Id*.

However, the Court also recognized that "foreseeability *alone* is insufficient to establish personal jurisdiction" under C.P.L.R. § 302(a)(3)(ii).  ECF No. 48 at 6 (emphasis added). Instead, "foreseeability must be coupled with evidence of a purposeful New York affiliation, such as a discernible effort to directly or indirectly serve the New York market."  *Zanotti v. Invention Submission Corp.*, No. 18-cv-5893, 2020 WL 2857304, at *15 (S.D.N.Y. June 2, 2020)

6

(citing *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (N.Y. App. Div. 1991)) (internal quotation marks omitted). Although these limits on the scope of C.P.L.R. § 302(a)(3)(ii) are not expressly set forth in the statute, courts have imposed them in order to comply with federal due process limits. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (requiring the presence of "[an] activity or an occurrence that takes place in the forum State . . . [which] therefore subject[s] [the defendant] to the State's regulation"); *see also Zanotti*, 2020 WL 2857304, at *15 (explaining that the "purposeful New York affiliation" requirement is designed "to avoid conflict with federal constitutional due process limits"); *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 339 (E.D.N.Y. 2013) (explaining that New York courts impose a "purposeful availment" requirement "to avoid conflict with federal constitutional due process limits"). Thus, the Court asked the parties to return with evidence that "RLM did more than *just* sell products to JLG that resulted in a tort in New York." ECF No. 48 at 6 (emphasis added).

The Court now finds that Plaintiff has cleared the bar necessary to establish personal jurisdiction. The Court has already concluded that RLM did significant business selling jib links destined for the New York market via its sales to JLG, even if it did not sell directly to New York customers. ECF No. 48, *see also*, ECF No. 91 at 4; 91-3 at 1. Beyond that, RLM's website invited customers around the country to solicit its services and request quotes for potential sales. *See* ECF No. 92-4. In addition, jurisdictional discovery has demonstrated that RLM made two direct sales to New York clients between 2015 and 2019 totaling $8,074.95. ECF No. 87-1 at 7; ECF No. 87-10 at 1–2. Together, the Court finds these facts establish that RLM purposefully availed itself of New York's laws.

7

RLM argues that its website cannot establish personal jurisdiction, ECF No. 93 at 3, and that the two direct sales to New York are too small a percentage of its total revenue to establish personal jurisdiction, ECF No. 87-1 at 3 ("RLM has infinitesimal sales to two clients in the State of New York, comprising 0.014% of RLM's overall [revenue].").[2]

There are two reasons why RLM's argument is not persuasive:  First, when analyzing purposeful availment under C.P.L.R. § 302(a)(3), courts examine both direct *and indirect* contacts.  *See In re Dental Supplies Antitrust Litig.*, No. 16-cv-696017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017) ("[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly *or indirectly* serve the New York market.") (emphasis added) (citation omitted); *see also Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999) ("[Defendant] did indeed attempt to serve the New York market, even if it did so *indirectly*") (emphasis added).  Here, RLM's indirect contacts include the jib links it sold to JLM which flowed to the New York market.  ECF No. 91 at 4.

Second, even without these indirect contacts, courts have found the combination of a website and direct sales to New York customers—even if limited, as is the case here—can establish that a company personally availed itself of New York's laws.  For example, in *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, the district court agreed that a "defendant should not be subject to jurisdiction in New York simply because its home page could be viewed by users there."  975 F. Supp. 494, 498 (S.D.N.Y. 1997).  However, the website's statement that it "could help customers 'across the U.S.'" in combination with a miniscule number of additional contacts—just six customers out of 7,500—"show[ed]

---

[2]    RLM also asserts that the Court does not have general jurisdiction over it.  ECF No. 87-1 at 7–8.  However, the fact that the Court does not have general jurisdiction over RLM is not in dispute.  ECF No. 48 at 4 n.1

8

defendant's purposeful availment of New York." *Id* at 498–99. This case is analogous: RLM's website states that it can "complete your project on time and according to your specifications," and some New York customers have taken them up on that offer.[3]

The Court is thus satisfied that "RLM did more than *just* sell products to JLG that resulted in a tort in New York," ECF No. 48 at 6 (emphasis added), and concludes that it has jurisdiction under C.P.L.R. § 302(a)(3)(ii).

## B. Due Process

The only remaining issue is whether the exercise of personal jurisdiction violates RLM's due process rights. "There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York: (1) the minimum contacts inquiry and (2) the reasonableness inquiry." *Carson Optical*, 2020 WL 1516394, at *6 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010)).

### 1. Minimum Contacts

The minimum contacts needed to satisfy due process are less strict than the test to establish jurisdiction under C.P.L.R. § 302(a)(3)(ii). *Levans,* 988 F. Supp. 2d at 339. "To establish that Defendants have the requisite minimum contacts with the forum, Plaintiff must show that Defendants purposefully availed themselves of the privilege of doing business in New

---

[3] The fact that RLM's contacts in this case may be smaller than the defendant's contacts in *American Network* does not change the analysis. A single sale is enough for a company to have availed itself of New York's laws. *See Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 621–22 (S.D.N.Y. 2013) ("A single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1).") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir.2012)). "Although Section 302(a)(1) is typically invoked in breach of contract cases[,] it applies as well to actions in tort when supported by a sufficient showing of facts." *Id.* (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir.2004) (internal quotation and citations omitted)).

9

York." *Carson Optical*, 2020 WL 1516394, at *6 (citing *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *4 (E.D.N.Y. June 4, 2012)).

In the instant case, RLM's activities in New York satisfy the minimum contacts test because the company: (i) intentionally marketed and sold its products nationwide, including in New York, through its website, and (ii) made direct sales to New York. *See* ECF No. 92-4; ECF No. 87-1 at 7; ECF No. 87-10 at 1–2. Other district courts have found such conduct satisfies the minimum contacts inquiry for due process purposes. *See, e.g., EnviroCare Techs.*, 2012 WL 2001443, at *4 ("Defendants marketed and sold their products nationwide through Amazon . . . and, on at least three occasions, received orders from Plaintiff in New York and arranged for products to be shipped to Plaintiff in New York. Such conduct is sufficient to satisfy due process's 'minimum contacts' inquiry.").

### 2. Reasonableness

"Although a plaintiff's showing of 'minimum contacts' will generally satisfy due process, the defendant can present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carson Optical, Inc.*, 2020 WL 1516394, at *7 (quoting *E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18-cv-3217, 2018 WL 6528496, at *6 (S.D.N.Y. Dec. 12, 2018)). The reasonableness test "hinges on whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted). The following five factors are considered to determine reasonableness:

> [1] the burden on the defendant, [2] the interests of the forum State . . . [3] the plaintiff's interest in obtaining relief. . . . [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies . . . and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Carson Optical, Inc.*, 2020 WL 1516394, at *7 (quoting *Chloé*, 616 F.3d at 173).

Taking these factors into account, the Court finds that it is reasonable to subject RLM to personal jurisdiction in New York. It is not an unreasonable burden for a Michigan corporation, such as RLM, to defend itself in a lawsuit in New York. *See EnviroCare Techs.*, 2012 WL 2001443, at *4 ("Defendants' generalized complaints of inconvenience arising from having to defend themselves from suit in New York [when they are located in Oregon] do not add up to a compelling case that . . . would render jurisdiction unreasonable."). The second factor also favors Plaintiff because New York has a "manifest interest in providing effective means of redress for its residents." *Chloé*, 616 F.3d at 173. Plaintiff's interest in obtaining relief in New York satisfies the third factor as he resides in New York and presumably his witnesses and documentary evidence are here. The fourth factor is neutral—while the alleged injury occurred in New York, the design and manufacture of the allegedly defective part occurred in Pennsylvania and Michigan. Finally, the fifth factor favors Plaintiff because "providing a forum to adjudicate tort actions . . . furthers the substantive social policy" of holding individuals or corporations accountable when they injure residents of the forum state. *Hein v. Cuprum, S.A. de CV.*, 136 F. Supp. 2d 63, 70 (N.D.N.Y. 2001). Accordingly, exercising personal jurisdiction over RLM comports with traditional notions of fair play and substantial justice.

## **CONCLUSION**

For the foregoing reasons, Defendant RLM's motion to dismiss is DENIED.

**SO ORDERED.**

Dated: Brooklyn, New York
December 1, 2022

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge