UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER MATTHEOS,

                Plaintiff,

v.

JLG INDUSTRIES, INC. and RLM INDUSTRIES, INC.,

                Defendants.

**MEMORANDUM & ORDER**
20-CV-02356 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Peter Mattheos brings this action against Defendants JLG Industries, Inc. ("JLG") and RLM Industries, Inc. ("RLM") to recover for personal injuries sustained on March 19, 2019, when the aerial work platform of the JLG 660SJ Boom Lift (the "Boom Lift") on which he was standing failed, causing the work platform to drop suddenly. ECF No. 123-1 at 5 (JLG's Motion for Summary Judgment); ECF No. 130-9 at 5 (Plaintiff's Summary Judgment Opposition).[1] JLG manufactured the Boom Lift, and RLM manufactured certain parts of the Boom Lift. ECF No. 119 ¶¶ 2, 4 (Plaintiff's Response to JLG's Rule 56.1 Statement). Plaintiff asserts claims against both Defendants for: (i) strict products liability; (ii) negligence; and (iii) breach of express and implied warranties. ECF No. 1-2 ¶¶ 1–62 (Complaint).

Presently before the Court are: (i) JLG's motion to preclude one of Plaintiff's proposed experts from testifying at trial, ECF No. 122 (JLG's *Daubert* Motion), and (ii) JLG's motion

---

[1] Unless otherwise noted, the Court refers to the pages assigned by the Electronic Case Files system ("ECF").

seeking summary judgment against Plaintiff on all his claims, ECF No. 123-1. RLM has not moved for summary judgment.[2]

## BACKGROUND[3]

On March 19, 2019, Plaintiff was operating the Boom Lift in connection with his employment at non-party Sunbelt Rentals ("Sunbelt"). ECF No. 119 ¶¶ 1–2. A boom lift is a self-propelled hydraulic personnel lift with a work platform on the end of an elevating and rotating boom.[4] *Id.* ¶ 18. A jib is an extension of the straight boom, which is capable of lifting or lowering its platform independent of the boom. *Id.* ¶ 22. On a boom lift, there are two round jib links that support the platform. *Id.* ¶ 23. The jib links on the Boom Lift were manufactured by RLM. *Id.* ¶ 4. RLM manufactured the jib links based on specifications provided by JLG. *Id.* ¶¶ 6–9.

On February 22, 2019, when the Boom Lift was rented to another company, the basket on the Boom Lift was damaged in an accident (the "February Accident"). *Id.* ¶¶ 44–45; ECF No. 116-2 at 1 (Exhibit in Support of JLG's Motion for Summary Judgment). Less than a week before Plaintiff's accident, on March 13, 2019, Sunbelt repaired the Boom Lift, including installing and securing a new basket, and "repair[ing the] skyguard assembly." ECF No. 119 ¶ 47; ECF No. 116-2 at 2, 5–7.

---

[2] JLG is also seeking summary judgment on its cross-claims against Co-Defendant RLM. ECF No. 120 (JLG's Motion for Summary Judgment Against RLM). The Court will address this motion in a separate Order.

[3] Unless otherwise specified, the facts cited herein are undisputed.

[4] Merriam-Webster defines a "boom" as "a long more or less horizontal supporting arm or brace." *See* Boom, Merriam-Webster, available at https://perma.cc/432J-NTZH (last visited August 15, 2024).

## PROCEDURAL HISTORY

Plaintiff filed suit against Defendants on March 6, 2020, in Suffolk County Supreme Court. ECF No. 1-2. Plaintiff asserts claims against Defendants under theories of negligence, strict products liability, and breach of express and implied warranties. *Id.* On May 20, 2020, JLG filed its answer and asserted cross-claims against Co-Defendant RLM for contribution, common law indemnification, contractual indemnification, and breach of contract. ECF No. 1-6. On May 27, 2020, Defendants removed the case to this Court. ECF No. 1. On December 4, 2023, JLG filed a motion seeking summary judgment against Plaintiff, ECF No. 123, and a motion seeking to preclude one of Plaintiff's proposed experts from testifying, ECF No. 122. On March 4, 2024, Plaintiff filed his oppositions to JLG's motion for summary judgment, ECF No. 130-9, and JLG's *Daubert* motion, ECF No. 131-5 (Plaintiff's *Daubert* Opposition). JLG filed its replies in support of both motions on March 22, 2024. ECF No. 136 (JLG's Summary Judgment Reply); ECF No. 137 (JLG's *Daubert* Reply).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[5] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v.*

---

[5] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

*Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing complaint).

## **DISCUSSION**

Plaintiff asserts his products liability claims against Defendants under three theories: (i) strict products liability; (ii) negligence; and (iii) breach of express and implied warranties. *See generally* ECF No. 1-2 (Complaint). JLG contends that summary judgment is appropriate on each of Plaintiff's claims because: (i) the jib links were not defectively designed, ECF No. 123-1 at 2–6; (ii) the jib links that failed were not the proximate cause of Plaintiff's accident, *id.* at 6–9; (iii) there is no evidence that JLG failed to warn or that any alleged failure to warn caused Plaintiff's accident, *id.* at 10; and (iv) Plaintiff cannot prove that the Boom Lift was defective and unfit for its intended purpose or that the defect existed at the time that JLG sold the Boom Lift, *id.* at 11–12.

### I.  JLG's Motion for Summary Judgment on Plaintiff's Strict Products Liability and Negligence Claims

In order to establish a *prima facie* case with respect to Plaintiff's strict products liability and negligence claims, Plaintiff must show "(1) that the product was defective, and (2) that the defect was a substantial factor in bringing about the injury." *Zsa Zsa Jewels, Inc. v. BMW of N. Am.*, 419 F. Supp. 3d 490, 506 (E.D.N.Y. 2019). With respect to the first element, "[t]here are three types of defects recognized under New York law: (1) design defects; (2) manufacturing defects; and (3) defective or inadequate warnings." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 740 (E.D.N.Y. 2016). Here, Plaintiff claims that his injuries were caused by all three types of recognized defects. ECF No. 130-9 at 6.

"Under New York law, a plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently." *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-cv-209, 2022 WL 4357555, at *9 (E.D.N.Y. Sept. 20, 2022). "It is also well-settled that where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent." *Id.* Accordingly, the Court will analyze Plaintiff's negligence and strict products liability claims together.

#### A.  Design Defect

"In a strict liability claim for defective design, Plaintiff must show: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing Plaintiff's injury." *Lara*, 174 F. Supp. 3d at 740. "The design of a product is not reasonably safe if a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Boateng*, 2022 WL 4357555, at *13. Plaintiff is

5

"under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm, and it was feasible to design the product in a safer manner." *Id.*

JLG argues that because Plaintiff does not identify a specific problem with the jib links on the Boom Lift or "produce any expert testimony that JLG's use of the round jib links rendered the Boom Lift defective," his design defect claims must be dismissed. ECF No. 123-1 at 8. In support of this argument, JLG proffers a report prepared by two experts, Mark Lawrence and John Myers, who opine that, in sum and substance, the round jib links and, in particular, the welds on the round jib links were not defectively designed, and that there was a potential alternative cause of Plaintiff's accident. *See generally* ECF No. 116-3. Plaintiff has not challenged the admissibility of JLG's expert report. Plaintiff counters that he has demonstrated that the round jib links were not reasonably safe through the testimony of his two experts—Doctor David Rocheleau and James Waldvogel.

Dr. Rocheleau examined the round jib links used at the time of Plaintiff's accident and compared them to the rectangular links that had previously been used. ECF No. 119-3 at 1 (Rocheleau Report). Dr. Rocheleau determined that the rectangular jib link was "far superior in strength" to the round jib link. However, and crucially, Dr. Rocheleau did not opine that the round jib link was defective, not strong enough to be used for its intended purpose, or not reasonably safe. *See generally* ECF No. 119-3. And, the mere existence of a better option does not render a product, "as designed, . . . unreasonably dangerous for its intended use." *Delehanty v. KLI, Inc.*, 663 F. Supp. 2d 127, 133 (E.D.N.Y. 2009).[6]

---

[6] JLG has filed a separate motion seeking to preclude Dr. Rocheleau's testimony. ECF No. 122. In considering the viability of Plaintiff's design defect claim, the Court has considered and credited Dr. Rocheleau's July 12, 2024, expert report and his deposition testimony in full.

6

Plaintiff next references Mr. Waldvogel's testimony that the weld contemplated by JLG's design drawings for the round jib link was difficult to fabricate by JLG's vendor, and thus produced inconsistent results in the welding process. ECF No. 130-9 at 12–13; ECF No. 119-1 at 6–8. Plaintiff appears to suggest that Mr. Waldvogel's testimony that JLG had to revise its weld drawings on multiple occasions and that the weld was difficult for RLM to fabricate is sufficient to establish that the round jib links, as designed, were defective. ECF No. 130-9 at 12–13. Plaintiff also cites to the portion of Mr. Waldvogel's report in which he states that "there is no evidence of any failure of the welds on the original rectangular jib links" but that the round jib links were "subject to various issues." ECF No. 119-1 at 4. However, again, Mr. Waldvogel does not actually state that any of the weld designs for the round jib link, if manufactured correctly, would have resulted in a jib link that was defective or not reasonably safe. *See generally* ECF No. 119-1. In fact, Mr. Waldvogel agreed during his deposition that if RLM had followed "the various specifications and drawings" provided by JLG, the weld would not have failed. ECF No. 116-5 at 21.

Finally, Plaintiff cites to testimony by JLG employees that Plaintiff suggests establishes that the rectangular jib links were "heavier, stronger, and more durable" than the round jib links. ECF No. 130-9 at 9. But again, the fact that the rectangular jib links may have arguably been superior to the round jib links alone does not establish that the round jib links were not reasonably safe, and Plaintiff has adduced no evidence to suggest as much.

---

Because the Court finds that JLG's motion seeking summary judgment on Plaintiff's design defect claim should be granted even if Dr. Rocheleau's testimony is credited, and because the Court understands that Dr. Rocheleau's testimony is relevant only to Plaintiff's design defect claim, the Court denies JLG's motion to preclude Dr. Rocheleau's testimony as moot.

7

Therefore, although Dr. Rocheleau's testimony arguably creates a material issue of fact as to whether it was feasible to design the jib links in a safer manner, that alone is not sufficient, and Plaintiff offers no evidence or expert testimony that demonstrates that the round jib links, as designed, "were not reasonably safe." *See, e.g.*, *Soliman v. Daimler AG*, No. 10-cv-408, 2011 WL 6945707 at *6 (E.D.N.Y. Aug. 8, 2011) ("Due to the lack of sufficient evidence, and expert testimony in particular on the issue of whether the design of the [product at issue] was not reasonably safe, Plaintiff's [design defect] claim must fail."), *report and recommendation adopted*, No. 10-cv-408, 2011 WL 4594313 (E.D.N.Y. Sept. 30, 2011); *Lara*, 174 F. Supp. 3d at 741 (holding that because plaintiff could not present expert testimony to show that the product at issue was actually defective, no genuine issue of material fact existed and plaintiff's design defect claims failed as a matter of law). Accordingly, because JLG has demonstrated the absence of a genuine issue of material fact as to whether the round jib links were safely designed, and Plaintiff has not created a material issue of fact by offering admissible testimony or evidence tending to show that the round jib links were defectively designed, the Court must dismiss Plaintiff's design defect claim.[7] *See, e.g., Brown*, 654 F.3d at 358.

### B. Manufacturing Defect

To state a manufacturing defect claim, Plaintiff must demonstrate that "a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper

---

[7] To the extent that Plaintiff also attempts to assert a design defect claim against RLM, the Complaint and Plaintiff's filings related to the instant motion contain no allegations that RLM had any role in designing the product at issue and, as explained herein, Plaintiff has not created a material issue of fact regarding whether the round jib links were defectively designed. Accordingly, because JLG's motion for summary judgment on Plaintiff's design defect claim put Plaintiff on notice that he had to "come forward with all of its evidence" to support his design defect claim, the Court also dismisses any design defect claim asserted against RLM. *Celotex*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come

workmanship, or because defective materials were used in construction, and that the defect was the cause of [his] injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001). Specifically, Plaintiff "must show the product purchased departed from the manufacturer's intended specifications for other units in the same line of product." *Boateng*, 2022 WL 4357555, at *19. Once Plaintiff establishes a *prima facie* case, JLG must "submit proof in admissible form establishing that [P]laintiff's injuries were not caused by a manufacturing defect in the product." *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 71 (W.D.N.Y. 2004). Once JLG does so, the burden shifts back to Plaintiff, who must "demonstrate the existence of a triable issue of fact" as to whether the product was "defective when it left the manufacture[r]." *Id.*

      JLG does not "dispute" the existence of a manufacturing defect or that the welds on the jib links failed but instead argues that it is entitled to summary judgment on Plaintiff's manufacturing defect claim because Plaintiff "will not be able to prove that the failed welds on the Boom Lift's jib links were the proximate cause of this accident." ECF No. 123-1 at 11. JLG argues that additional components were damaged as a result of the February Accident that were not repaired by Sunbelt, and that the damage caused by this accident was the actual cause of Plaintiff's injuries. *Id.* As support for this argument, JLG offers the testimony and report of its experts, Messrs. Lawrence and Meyers, who concluded that the February Accident caused significant damage to the Boom Lift and that Plaintiff's accident "would not have occurred" had the Boom Lift not been involved in the February Accident. *Id.* at 12; *see also* ECF No. 116-3.

---

forward with all of her evidence."); *see also Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir. 2000) (plaintiff was not procedurally prejudiced by district court's decision to grant summary judgment *sua sponte* to non-moving defendant because "[t]he threat of procedural prejudice is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party").

9

In response, Plaintiff proffers significant admissible evidence sufficient to establish triable issues of fact regarding whether the defective jib links were the proximate cause of Plaintiff's accident. For example, Plaintiff offers Sunbelt's Repair Records, ECF No. 116-2, which JLG itself attached to its motion. These records, taken together with Plaintiff's own testimony, ECF No. 119-12 at 2, that of John Barbato, a senior Sunbelt employee, ECF No. 119-10 at 3–7, 12–14, and that of David Ojeda, the mechanic who repaired the Boom Lift after the February Accident, ECF No. 119-11 at 2–5, raise questions about the extent of the damage caused to the Boom Lift by the February Accident. This evidence also calls into question whether the damage caused to the Boom Lift by the February Accident led to Plaintiff's injuries. And, one of Plaintiff's experts, Mr. Waldvogel, concluded that the manufacturing defect caused Plaintiff's accident, and addressed the February Accident in his report, calling any conclusions regarding damage done to the Boom Lift based on the accident "speculative." ECF No. 119-1 at 6, 12. Mr. Waldvogel also explained that some of the damage also noted by JLG's experts was likely caused by the "contact of the platform with the pavement after the Jib Link weld failure occurred," *id.* at 6, and that "[a]ny argument that pre-existing stresses or bending damage caused the defective welds to fail has no merit," *id.* at 10. A jury could reasonably credit this testimony and reach a determination that the defective welds on the jib link caused Plaintiff's accident.

To determine that the February Accident was the proximate cause of Plaintiff's accident and not the defective welds on the jib link, the Court would have to assess competing evidence, and make credibility determinations—accordingly, summary judgment on Plaintiff's manufacturing defect claim is not appropriate. *See, e.g.*, *Saeli*, 36 F. 4th at 456.

10

### C. Failure to Warn

In addition to theories of liability predicated on defective design and defective manufacturing, Plaintiff also seeks recovery based on a failure to warn theory. "A defendant may be liable under a negligence or strict products liability theory by failing to adequately warn of a potentially harmful aspect of the product." *Boateng*, 2022 WL 4357555, at *15. Under New York law, "a manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Monell v. Scooter Store, Ltd.*, 895 F. Supp. 2d 398, 413 (N.D.N.Y. 2012). Thus, to make out a *prima facie* failure to warn case, Plaintiff "must show (1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm." *Boateng*, 2022 WL 4357555, at *15. "A manufacturer can be liable even after the product is sold based on dangers in the use of a product which come to his attention after manufacture or sale," through "being made aware of later accidents involving dangers in the product of which warning should be given to users." *Id.* Under New York law, "liability for failure to warn may be imposed based upon either the complete failure to warn of a particular hazard or the inclusion of warnings that are insufficient." *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729, 752 (W.D.N.Y. 2015). The New York Court of Appeals "has described the standard for evaluating failure-to-warn liability as intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause." *Monell*, 895 F. Supp. 2d at 414. Because of the fact-specific nature of this inquiry, the Second Circuit has held that "[t]he adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not

11

ordinarily susceptible to the drastic remedy of summary judgment." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997).

JLG argues that Plaintiff's failure to warn claim must fail because: (1) Plaintiff does not identify the particular danger that it allegedly failed to warn Plaintiff of or identify any additional warning that would have prevented Plaintiff's accident, and (2) Plaintiff offers no expert opinions on the absence or adequacy of JLG's warnings or the causal connection to Plaintiff's accident. ECF No. 123-1 at 14. Plaintiff responds that it has put forward evidence to demonstrate that JLG was aware of defects related to the welds of the round jib links months before Plaintiff's accident and that JLG was aware that this defect could cause the jib links to come apart at the welds, which could result in serious injury or death. ECF No. 130-9 at 25. Plaintiff argues that JLG's failure to warn Sunbelt of any issue with the jib links constitutes a failure to warn of a known and foreseeable danger that could cause serious injury or death. *Id.*

Specifically, Plaintiff cites to testimony from JLG's Manager of Product Safety and Reliability, who testified that in May of 2018 JLG became aware of "cracks being found" in the "weld of the jib link," but that JLG gave no instructions to Sunbelt or any of its customers regarding the reported cracks. ECF No. 119-6 at 1–3. Plaintiff's expert, Mr. Waldvogel, also noted in his report that JLG became "aware of a significant Jib Link welding issue" after an "Action Request" was initiated on August 9, 2018, by JLG after it observed "suspect welds during an inspection of Jib Links submitted by RLM at a paint shop for a different matter." ECF No. 119-1 at 5. Mr. Waldvogel reviewed a "sampling of causes for replacement or repair of the Jib Links" and noted that "incidents involving weld failures occurred in equipment at different sites extending from 5/30/18 to 4/9/20." *Id.* Plaintiff also submitted as evidence warranty claims that JLG received prior to Plaintiff's accident that asserted defects in the jib link welds. *See* ECF

No. 130-7 at 3–5, 8. Finally, Plaintiff argues that JLG's failure to warn was the proximate cause of his injury because a Sunbelt supervisor testified that had Sunbelt been made aware of a problem with the welds, it "would have definitely changed the way" Sunbelt inspected machines and caused inspectors to inspect them "more in depth." ECF No. 119-5 at 2–3. JLG counters that Sunbelt was already incorrectly inspecting the welds and that this discredits any suggestion that the more in-depth inspections would have prevented the accident had Sunbelt been made aware of a problem. ECF No. 136 at 12. Neither Plaintiff nor JLG offer any additional evidence regarding causation, and JLG has not endeavored to "show the lack of proximate cause by demonstrating the futility of warnings, through evidence that plaintiff was fully aware of the hazard through general knowledge, observation, or common sense." *Boateng*, 2022 WL 4357555, at *16.

Plaintiff has identified a particular danger with the manufacturing of the welds of the jib links and raised questions of fact as to whether JLG should have warned Sunbelt and other customers of the potential danger that the damaged welds posed when JLG became aware of the issue after the product was sold. JLG does not assert that it provided any warning about the jib links or that it did not have a duty to warn its customers about the possible danger. Additionally, there are open questions of fact as to whether JLG's failure to warn Sunbelt was the proximate cause of Plaintiff's injury. Because any further evaluation of Plaintiff's failure-to-warn claim would necessarily require a fact-specific inquiry, the Court denies JLG's motion for summary judgment on Plaintiff's failure-to-warn claim. *Monell*, 895 F. Supp. 2d at 414.

> II. **JLG's Motion for Summary Judgment on Plaintiff's Claim of Breach of Express and Implied Warranties**

Plaintiff also asserts claims against JLG under theories of breach of express and implied warranties. ECF No. 1-2 ¶¶ 1–52.

13

### A. Breach of Express Warranty

To state a claim for breach of express warranty, Plaintiff must show "that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase, and that the warranty was relied upon." *In re Fosamax Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 487 (S.D.N.Y. 2013). "So long as a plaintiff can show that the express warranty was part of the bargained-for agreement, [the] plaintiff can succeed on an express warranty claim regardless of actual reliance on the particular terms of the warranty." *Donald v. Shinn Fu Co. of Am.*, No. 99-cv-6397, 2002 WL 32068351, at *5 (E.D.N.Y. Sept. 4, 2002) (holding that "so long as the express warranty is included in the eventual contract, the purchaser can sue for a breach of that warranty").

JLG argues that Plaintiff's breach of express warranty claim should be dismissed because Plaintiff has not identified any specific language from JLG that served as the requisite "affirmation of fact or promise by the seller." ECF No. 123-1 at 15. In response, Plaintiff submits a document titled "JLG New Product Warranty North America" in which JLG warrants "its new products made by it to be free from defects in material or workmanship for twelve (12) months from the warranty start date." ECF No. 130-8. JLG further warrants that "the structural elements of each new Boom Lift" are "free from defects in material or workmanship for five (5) years from the warranty start date." *Id.* The parties agree that Sunbelt purchased the Boom Lift in April of 2018, and that Plaintiff was injured on March 19, 2019—accordingly, Plaintiff's accident occurred within the one-year warranty window. ECF No. 119 ¶¶ 1, 17. In its reply, JLG does not argue that the warranty it submits was not part of the bargained-for agreement but instead states that Plaintiff's breach of warranty claims must be dismissed for the same reasons that its manufacturing defect claims must be dismissed.

14

"It is well settled that where, as here, a warranty protects against defects in 'materials or workmanship,' the warranty covers manufacturing defects, but not design defects." *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 106 (W.D.N.Y. 2018). Accordingly, because the Court has determined that material issues of fact prevent the determination of Plaintiff's manufacturing defect claim at this stage, *see supra* Section I.B., and because Plaintiff has put forward an express warranty that protects against manufacturing defects, the Court finds that material issues of fact remain as to Plaintiff's claim for breach of an express warranty, and declines to grant JLG's motion seeking summary judgment. *See Amica v. Mut. Ins. Co. v. WHAC LLC*, 106 Fed. Supp. 3d 6, 12 (W.D.N.Y. 2020) (declining to dismiss plaintiff's breach of express warranty claims after concluding that material questions of fact remained as to whether the product at issue was defectively manufactured).

### B.  Breach of Implied Warranties

JLG also asserts that summary judgment is warranted on Plaintiff's claim for breach of an implied warranty because Plaintiff cannot prove that the Boom Lift was defectively designed or manufactured or that any actions by JLG proximately caused Plaintiff's accident. ECF No. 123-1 at 15–16. Plaintiff responds that JLG's motion must be denied because Plaintiff has established issues of material fact with respect to each element of the claim vis-à-vis his arguments against granting summary judgment on his strict products liability claims.

Sections 2-314 and 2-315 of the UCC create two implied warranties: (i) the implied warranty of merchantability, and (ii) the implied warranty of fitness for a particular purpose. *See* UCC §§ 2-314, 2-315. With respect to the implied warranty of merchantability, "[a] manufacturer may be held liable under New York law for breach of implied warranty when its products are not fit for the ordinary purposes for which goods are used." *Khusenov v. Prokraft*

15

*Inc.*, No. 21-cv-3703, 2023 WL 1785527, at *13 (E.D.N.Y. Feb. 6, 2023).  The New York Court of Appeals has held that "liability under strict products liability and implied warranty theory are essentially the same, except that under the implied warranty theory, it is not necessary to show the feasibility of alternative designs or the manufacturer's reasonableness in marketing it in the unsafe condition." *Dalton v. Stedman Mach. Co.*, No. 05-cv-351676, 2008 WL 351676, at *7 (W.D.N.Y. Feb. 7, 2008) (citing *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 738–39 (N.Y. 1995)); *see also Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 159 (N.D.N.Y. 2020) ("[W]hile an implied warranty claim is a conceptually distinct cause of action from a strict products liability claim, in practice, liability under strict products liability and implied warranty theory are essentially the same.").  Accordingly, in order to succeed on an implied warranty of merchantability claim, Plaintiff must establish that:  (1) "the product was defectively designed or manufactured;" (2) "the defect existed when the manufacturer delivered it to the purchaser or user;" and (3) "the defect is the proximate cause of the accident." *Plemmons v. Steelcase Inc.*, No. 04-cv-4023, 2007 WL 950137, at *3 (S.D.N.Y. Mar. 29, 2007).

      Here, JLG does not "dispute" that there was a manufacturing defect, and the Court has already found that there are material issues of fact regarding whether the defect was the proximate cause of Plaintiff's accident.  *See supra* Section I.B.  Accordingly, the Court finds that there are also material issues of fact regarding causation that preclude granting JLG's motion for summary judgment on Plaintiff's claim for breach of the implied warranty of merchantability. *See, e.g.*, *Engler v. MTD Prods., Inc.*, No. 13-cv-575, 2015 WL 900126, at *15–17, *19 (N.D.N.Y. Mar. 2, 2015) (finding that the same material issues of fact prevented the court from granting summary judgment to defendants on plaintiff's manufacturing defect and breach of implied warranty claims); *Wesp v. Carl Zeiss*, 783 N.Y.S.2d 439, 442 (N.Y. App. Div. 2004)

(holding that the material issues of fact that required denial of defendants' motion for summary judgment on plaintiff's manufacturing defect claims also required denial of defendants' motion seeking summary judgment on plaintiff's breach of implied warranty claim).

To make out a claim for breach of an implied warranty of fitness for a particular purpose, "the buyer must demonstrate that the seller, at the time of contracting, had reason to know any particular purpose for which the goods were required and that the buyer was relying on the sellers [sic] skill or judgment to select or furnish suitable goods and that the buyer did in fact rely on that skill." *Condoleo v. Guangzhou Jindo Container Co.*, 427 F. Supp. 3d 316, 329 (E.D.N.Y. 2019). JLG argues that it is entitled to summary judgment on Plaintiff's claim because Plaintiff cannot prove that Sunbelt was relying on JLG's skill and judgment when it purchased the Boom Lift. ECF No. 123-1 at 16. JLG cites to no evidence to support this assertion other than a public statement on Sunbelt's website referring to Sunbelt as a "leader in the equipment rental industry." *Id.* Plaintiff argues that "[t]he mere fact that Sunbelt is a 'leader' in the 'equipment rental' industry" does not mean that "Sunbelt did not rely on JLG's skill and judgment in purchasing the subject Boom Lift" since Sunbelt is not a manufacturer of boom lifts or an expert in the welding of boom lift components. ECF No. 130-9 at 28–29. In support of its position, Plaintiff cites to testimony from Mr. Barbato, a service manager at Sunbelt, who testified that he and other Sunbelt technicians were trained by JLG about their products. ECF No. 130-5 at 4–7. This testimony is sufficient to create a material issue of fact regarding whether Sunbelt relied on JLG's skill and judgment when it purchased the Boom Lift because it had only limited knowledge about the machinery and how it functioned. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose is denied.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part JLG's motion seeking summary judgment against Plaintiff, ECF No. 123-1, and DENIES JLG's Motion to preclude the testimony of Plaintiff's expert, Dr. Rocheleau, as moot, ECF No. 122.  Accordingly, Plaintiff's design defect claims against JLG and RLM are DISMISSED.  The Court respectfully refers this case, for settlement purposes only, to Magistrate Judge Dunst to conduct a settlement conference with all parties on a date agreed upon with Judge Dunst.  All parties are directed to file a proposed joint pretrial order in accordance with Section VI.B of the Court's Individual Practices on or before October 14, 2024.

SO ORDERED.

*/s/ Hector Gonzalez*
  HECTOR GONZALEZ
  United States District Judge

Dated: Brooklyn, New York
       August 15, 2024