UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER MATTHEOS,

              Plaintiff,

     v.

JLG INDUSTRIES, INC., and RLM INDUSTRIES, INC.,

              Defendants.

JLG INDUSTRIES, INC.,

              Cross-Claimant,

     v.

RLM INDUSTRIES, INC.,

              Cross-Defendant.

**MEMORANDUM & ORDER**
20-CV-02356 (HG) (LGD)

**HECTOR GONZALEZ**, United States District Judge:

In this personal injury action, Defendant JLG Industries, Inc. ("JLG") moves for summary judgment on its cross-claims against co-Defendant RLM Industries, Inc ("RLM"). *See* ECF No. 155 (Motion for Summary Judgment). For the reasons that follow, the Court GRANTS in part and DENIES in part the motion and awards partial summary judgment in JLG's favor.

## BACKGROUND

### I. Procedural History

This case arises from an injury sustained by Plaintiff Peter Mattheos, who alleges that the aerial work platform of a boom lift on which he was working dropped suddenly. *See Mattheos v.*

*JLG Indus., Inc.*, No. 20-cv-02356, 2024 WL 3835174, at *1 (E.D.N.Y. Aug. 15, 2024).[1] In the wake of this incident, Plaintiff sued both JLG, which manufactured the boom lift, and RLM, which manufactured and sold to JLG certain parts of the boom lift, including the "jib links" that support the work platform. *Id.* at *1. Plaintiff alleges that JLG and RLM breached certain warranties they made about the quality of the jib links, which caused Plaintiff's injury, ECF No. 1-2 ¶¶ 39–50 (Complaint); that Plaintiff's injuries were "due solely to the [negligent] acts and/or omissions" of Defendants, *id.* ¶¶ 60–61; and that the jib links were "defective and that said defect was a substantial factor in causing injury to the Plaintiff," *id.* ¶ 54.

In its answer, JLG asserted cross-claims against RLM for contribution, common law indemnification, contractual indemnification and defense, and breach of contract. *See* ECF No. 1-6 ¶¶ 80–105 (JLG Answer). JLG thereafter sought summary judgment on its cross-claims for contractual indemnification and defense and breach of contract. *See* ECF Nos. 120 (Motion for Summary Judgment), 120-1 (Memorandum in Support of Motion). In its supporting memorandum, JLG argues that it is entitled to indemnification and defense from RLM pursuant to the terms and conditions (the "Terms and Conditions") that JLG asserts govern all jib-link-related-transactions between JLG and RLM. *See* ECF No. 120-1 at 7–17. JLG further argues that RLM breached the Terms and Conditions by failing to procure certain insurance coverage. *See id.* at 17–20. In opposition, RLM claims that the Terms and Conditions applied only to the

---

[1]   Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

The motion papers consist of: ECF No. 155 (JLG's Mot.); ECF No. 155-1 (JLG's Mem.); ECF No. 108 (JLG's Rule 56.1 Statement & Exs.); ECF No. 128 (JLG's Rule 56.1 Counterstatement & Exs.); ECF No. 161 (RLM's Opp.); ECF No. 109 (RLM's Rule 56.1 Statement & Exs.); ECF No. 113 (RLM's Rule 56.1 Counterstatement & Exs.); and ECF No. 163 (JLG's Reply).

2

purchase orders for jib links that incorporated those Terms and Conditions by reference in a footer, and a "significant percentage" of the purchase orders did not contain any such footer. *See* ECF No. 125 at 5 (Memorandum in Opposition); ECF No. 113-2 (Additional Purchase Orders). Because JLG was unable to identify which of the various purchase orders, which included those with and without footers, was relevant here (the "Relevant Purchase Order"), the Court initially found that RLM had demonstrated a material dispute of fact as to whether the Terms and Conditions applied and denied JLG summary judgment in the first instance. *See* Aug. 15, 2024, Text Order (Summary Judgment Order).

JLG then filed a motion for reconsideration pursuant to Local Rule 6.3, *see* ECF No. 141 (Motion for Reconsideration), explaining that the purchase orders submitted by RLM that lacked the pertinent footer all had delivery dates after JLG's shipment of the boom lift in this case. ECF No. 141-1 at 9; *see also* ECF No. 113-2. In other words, none of the purchase orders submitted by RLM without the footer could have been the Relevant Purchase Order. Having not fully appreciated the import of those delivery dates, the Court granted JLG's motion for reconsideration and concluded that JLG established, as a matter of law, that the Terms and Conditions govern the Relevant Purchase Order. *See* ECF No. 154 at 7 (Reconsideration Order). The Court further concluded that, pursuant to the Terms and Conditions, the instant dispute is governed by Pennsylvania law. *Id.* at 8; *see* ECF No. 108-4 § 11 (Terms and Conditions).

Against the backdrop of those threshold findings, the Court directed JLG to re-file its motion for summary judgment, and the parties to re-brief that motion, which is now before the Court.

## II. Facts[2]

This dispute involves allegedly defective "jib links." A "jib link" is comprised of "two steel end cast hubs welded to opposite ends of a round steel jib link tube." ECF No. 113 ¶ 20 (RLM Rule 56.1 Counterstatement). Two jib links support the work platform of a boom lift. *Id.* On October 16, 2015, JLG issued a Request for Quotation ("RFQ") for the manufacture of jib links that it would incorporate into its boom lifts. ECF No. 113 ¶ 4. On November 3, 2015, RLM responded to the RFQ and provided a written quote for the production of jib links. *Id.* ¶ 6. RLM's Vice President of Sales, Rick Meachum, signed the quote and confirmed that he had read and agreed to JLG's Terms and Conditions, which were linked therein. *Id.* ¶¶ 7–8; *see also* ECF No. 108-3 at 2 (Signed Quote). JLG accepted RLM's quote, and from November 23, 2015, onwards, RLM received 490 purchase orders from JLG. ECF No. 113 ¶¶ 11–12. In April 2018, JLG assembled and shipped out the boom lift that allegedly injured Plaintiff. *Id.* ¶ 14. RLM manufactured the jib links for that boom lift. *Id.* ¶ 22.

Under the applicable Terms and Conditions, RLM made certain promises. First, RLM promised to "indemnify" and "defend" JLG:

> from and against any and all claims, demands, actions, losses, injuries, damages, liabilities, obligations, costs and expenses, including without limitation attorneys' fees, experts' fees and other costs of defending any claim, demand or action and recall costs (collectively, "Losses"), which any Buyer . . . may incur or become liable for as a result of, on account of or in connection with (a) any actual or alleged default or breach by Supplier . . . of any of Supplier's warranties or any of Supplier's other obligations under this Purchase Order, or (b) any actual or alleged act or omission by Supplier . . . in performing any of Supplier's obligations under this Purchase Order, or (c) any defects or alleged defects in any Product . . . (except to the extent such defect was specifically due to a design that was furnished by Buyer) . . .

---

[2] Unless otherwise indicated, the Court recites the facts from RLM's counterstatement to JLG's Rule 56.1 statement to the extent those facts are undisputed by the parties and incorporates their references to the record.

4

ECF No. 108-4 § 13.  Second, RLM promised to procure commercial general liability insurance coverage, naming JLG as an additional insured, with coverage limits equal to or greater than $1 million primary and $4 million excess.  ECF No. 113 ¶ 47; *see* ECF No. 108-4 § 19 (the "Insurance Provision").  The record, however, shows that RLM obtained a primary commercial general liability insurance policy with a limit of $1 million per occurrence and a commercial liability umbrella insurance policy with a limit of $2 million per occurrence.  ECF No. 113 ¶¶ 48–49.  On April 13, 2020, JLG requested a defense and indemnification from RLM's insurer in this action, only to receive a letter indicating that JLG was not, in fact, named as an additional insured under RLM's policy.  *Id.* ¶¶ 50–51.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  "The role of the [C]ourt is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jin Dong Wang v. LW Rest, Inc.*, 81 F. Supp. 3d 241, 252 (E.D.N.Y. 2015).  In deciding a summary

5

judgment motion, the Court must view any ambiguities and inferences drawn from the facts in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

## **DISCUSSION**

### I.     **Insurance Provision**

First, JLG is entitled to summary judgment on its cross-claim against RLM for breach of the Insurance Provision. Under Pennsylvania law, "contractual provisions requiring one party to the contract to obtain insurance—commonly referred to as insurance procurement agreements—are both enforceable and in line with public policy." *Hackerman v. Demeza*, No. 13-cv-02883, 2019 WL 2343074, at *3 (M.D. Pa. June 2, 2019). "One who enters into an agreement to obtain insurance and neglects to fulfill his obligation becomes himself insurer and liable as such." *Id.* A party breaches an agreement to procure insurance where that party fails to obtain the promised insurance. *Id.* at *1, 3–4 (applying Pennsylvania law to award summary judgment as to defendant's counterclaim for breach of contract where it was undisputed that plaintiff did not carry the requisite insurance); *see Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Mgmt. Co., LLC*, 126 A.3d 1010, 1023 (Pa. Super. Ct. 2015) (noting that "[f]ailure to provide insurance coverage for losses covered under the Contract's applicable indemnity provisions would constitute a breach by [the appellee] under the Contract").

On this record, no reasonable jury could conclude that RLM did not breach the Insurance Provision. RLM does not dispute that the Terms and Conditions required it, the supplier, to procure commercial general liability insurance coverage, naming JLG as an additional insured, with limits equal to or greater than $1 million primary and $4 million excess ($5 million total). ECF No. 113 ¶ 47; *see* ECF No. 108-4 § 19. Nor does RLM dispute that it obtained something

6

different—a commercial general liability insurance policy with a limit of $1 million per occurrence and a commercial liability umbrella insurance policy with a limit of $2 million, not $4 million, per occurrence. *Id.* ¶¶ 48–49. RLM further admits that its insurer disclaimed coverage for JLG, as JLG was not named as an additional insured under RLM's policy. *Id.* ¶ 51. Because there is no genuine dispute that RLM failed to satisfy the requirements of the Insurance Provision, the Court grants summary judgment in JLG's favor on this cross-claim.

**II.     Duty to Defend**

Second, JLG is similarly entitled to summary judgment on its duty to defend cross-claim. Under Pennsylvania law, the "duty to defend is a distinct obligation, different from and broader than [the] duty to indemnify." *Old Guard Ins. Co. v. Sherman*, 866 A.2d 412, 416 (Pa. Super. Ct. 2004).[3] Specifically, the duty to defend attaches "if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope" of the contract. *Id.* at 416–17. Here, under the plain terms of the contract, which RLM does not dispute, ECF No. 113 ¶ 10, RLM, the supplier, agreed to "defend" JLG, the buyer:

> from and against any and all claims, demands, actions, losses, injuries, damages, liabilities, obligations, costs and expenses, including without limitation attorneys' fees, experts' fees and other costs of defending any claim, demand or action and recall costs (collectively, "Losses"), which any Buyer . . . may incur or become liable for as a result of, on account of or in connection with (a) any actual or alleged default or breach by Supplier . . . of any of Supplier's warranties or any of Supplier's other obligations under this Purchase Order, or (b) any actual or alleged act or omission by Supplier . . . in performing any of Supplier's obligations under this Purchase Order, or (c) any

---

[3]     "Although many of the cases discussing the duty to defend have been decided in the context of insurance contracts, . . . Pennsylvania courts considering the scope of an indemnitor's duty to defend an indemnitee under a non-insurance contract have applied the same rules of interpretation as those courts that have considered an insurer's duty to defend [and] indemnify an insured." *Jarema v. NC Masonry Co., Inc.*, No. 2011-cv-12293, 2017 WL 11475335, at *3 (Pa. Ct. Com. Pl. Apr. 5, 2017); *see Shucker v. First Energy Corp.*, 83 Pa. D. & C.4th 485, 490 (Pa. Ct. Com. Pl. 2006) (distinguishing between the duty to defend and the duty to indemnify in the context of a commercial contract).

> defects or alleged defects in any Product . . . (except to the extent such defect was specifically due to a design that was furnished by Buyer) . . .

ECF No. 108-4 § 13.

Applying those terms here, JLG is facing liability in connection with the allegations described in subsections (a) through (c), each of which independently triggers RLM's duty to defend JLG in this action. Plaintiff Mattheos alleges that (a) both JLG and RLM made certain warranties about the quality of the jib links, but they breached those warranties, causing Plaintiff to sustain severe injuries. ECF No. 1-2 ¶¶ 39–50. Plaintiff further alleges that (b) his injuries were "due solely to the [negligent] acts and/or omissions" of Defendants. *Id.* ¶¶ 60–61. Finally, Plaintiff alleges that (c) the jib links were "defective and that said defect was a substantial factor in causing injury to the Plaintiff." *Id.* ¶ 54. At the very least, then, JLG is subject to liability in connection with the alleged, if not actual, breaches, acts, omissions, and defects of or caused by RLM, which activates RLM's duty to defend.[4]

### III.  Duty to Indemnify

Third, the Court finds that summary judgment on JLG's indemnification cross-claim is premature because there has not yet been a determination of liability against it. The Court therefore denies that prong of the motion. Unlike the duty to defend, the question of indemnification "is not ripe until there is an actual need for indemnification, that is, until liability has been determined in the underlying action." *Republic Servs. of Pennsylvania, LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 474 (E.D. Pa. 2018) (applying Pennsylvania

---

[4] To the extent RLM argues that JLG cannot rely on subsection (c) because any "defect was specifically due to a design that was furnished by [JLG]," ECF No. 108-4 § 13, that argument is foreclosed by the Court's previous dismissal of Plaintiff's design defect claim, *see* ECF No. 138 (Order Granting in Part and Denying in Part JLG's Summary Judgment Motion against Plaintiff). But even if JLG were not entitled to a defense from RLM under subsection (c), each of subsections (a) and (b) independently triggers RLM's duty to defend.

law to hold that an indemnification request was not ripe where "[l]iability [had] not been established in the Underlying Action"). Here, too, there has not yet been a determination of liability in the main action between Plaintiff Mattheos and Defendants. Therefore, the Court denies summary judgment on JLG's indemnification cross-claim at this time.[5]

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part JLG's motion for summary judgment. The Court grants summary judgment on JLG's cross-claims for breach of the Insurance Provision and for a defense from RLM. The Court thus finds that RLM must defend JLG from and against any and all "Losses" JLG has sustained, and will sustain, in this action, including fees and costs as defined in the Terms and Conditions. *See* ECF No. 108-4 § 13. However, the Court denies summary judgment on JLG's cross-claim for indemnification because it is not yet ripe for determination. Given the instant ruling and the parties' upcoming trial, the Court refers this case to Magistrate Judge Dunst for a pre-trial conference, at which all parties shall appear, to discuss potential settlement or trial-ready mediation on an expedited basis.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       September 15, 2025

---

[5] JLG also argues that RLM breached its warranty under the Terms and Conditions to provide defect-free jib links. *See* ECF No. 155-1 at 11–14. However, JLG does not bring this purported breach as a standalone cross-claim. *See* ECF No. 1-6 at 19–24. Rather, JLG asserts this breach in support of its cross-claim for indemnification and a defense from RLM. *See* ECF No. 155-1 at 11–14. Having already concluded that JLG is entitled to a defense from RLM, and having also concluded that JLG is not, at this stage, entitled to indemnification from RLM, the Court declines to address the question of whether RLM breached this warranty.

9